

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



Signed July 19, 2006            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JACKIE KENNETH SPEARS AND | § | CASE NO. 04-50894-RLJ-7 |
| MAGGIE EDNA SPEARS, | § | |
| | § | |
| DEBTORS | § | |

## MEMORANDUM OPINION

The Court considers the objection of Floyd Holder, the chapter 7 trustee ("Trustee"), to the claim of AgTexas, PCA ("AgTexas"). By order entered March 22, 2006, on AgTexas's motion for reconsideration, the Court set aside its prior order granting the Trustee's objection to AgTexas's claim. Such prior order, entered September 7, 2005 (and was submitted to the Court as an agreed order between the parties), states (i) that AgTexas filed a secured claim on January 18, 2005, in the amount of $563,896.64; (ii) that the claim was amended on July 13, 2005, to reflect an unsecured deficiency claim of $289,771.40; and (iii) that the Trustee has no assets in his possession that are encumbered by AgTexas's lien (the "Agreed Order"). The Agreed Order,

therefore, provides that AgTexas's claim was allowed as an unsecured claim in the amount of $289,771.40.

As noted, the Agreed Order was set aside by the Court's Memorandum Opinion and Order entered March 22, 2006. Further hearing was held April 18, 2006, and briefs were submitted by the parties. The dispute centers upon the Trustee's receipt of $10,500 from Walsh Petroleum, Inc. ("Walsh Petroleum"), a mineral lessee on Yoakum County real properties being administered by the Trustee.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

### Statement of Facts

Jackie Kenneth Spears and Maggie Edna Spears filed this chapter 7 bankruptcy case on August 12, 2004. At the time of the bankruptcy filing, AgTexas was a creditor asserting a secured claim of $563,896.64, secured by, among other things, a third priority deed of trust lien against real property consisting of the majority of section 473, Block D, John H. Gibson survey, Yoakum County, Texas, and the north one-half of section 517, Block D, John H. Gibson survey, Yoakum County, Texas (the "Yoakum County properties").[1]

On November 2, 2004, AgTexas purchased the Yoakum County properties at a foreclosure sale held by the then second lienholder, LPP Mortgage, Ltd. Then, on December 10,

---

[1] AgTexas also held a security interest in various items of personal property, including farm products, equipment, livestock, crops, government payments, accounts, and general intangibles.

2004, AgTexas purchased the note and lien held by the first lienholder, First Ag Credit, FLCA, against the Yoakum County properties.

Given the liquidation of the collateral securing the claim of AgTexas, the Trustee objected to AgTexas's proof of claim, which, as mentioned, was filed as a secured claim for $563,896.64. The objection was resolved by the Agreed Order, which confirms AgTexas's unsecured claim of $289,771.40. AgTexas's claim is further evidenced by its amended proof of claim dated July 13, 2005, in such amount.

In August of 2005, the Trustee filed his application requesting authority to disburse $9,000 to AgTexas, such sum representing surface damage settlements collected as a result of activities on the Yoakum County properties. The $9,000 was collected by the Trustee in November and December of 2004, by which time AgTexas was the owner of the Yoakum County properties by virtue of its purchase of the properties at the November 2, 2004, foreclosure sale held by the second lienholder. By order dated August 15, 2005, the Trustee was directed to disburse the $9,000 to AgTexas. The Trustee was then of the opinion that the bankruptcy estate held no other property subject of AgTexas's lien. By letter dated August 9, 2005, to Andy Aycock, attorney for AgTexas, the Trustee stated that once he paid over the $9,000 to AgTexas, he would "no longer have any of [AgTexas's] collateral."

In October of 2004, prior to the November 2, 2004, foreclosure sale, the Trustee collected the $10,500, the present amount in dispute. Of the $10,500, $9,000 represents so-called surface damage payments made by Walsh Petroleum in connection with three drilling locations and $1,500 represents water used on the Yoakum County properties in connection with drilling one well. The payments were proposed in a letter by Walsh Petroleum dated October 7, 2004, to the

Trustee in which Walsh Petroleum stated that it anticipated drilling more wells on the Yoakum County properties and would pay $3,000 in surface damages per location, and $1,500 per well for water used in drilling each well. The Trustee accepted this proposal. A check in the amount of $10,500 was issued by Walsh Petroleum to the Trustee under cover letter dated October 15, 2004.[2] The Trustee deposited the funds in the bankruptcy estate's trustee account on October 22, 2004.

## Discussion

The issue before the Court is whether AgTexas's interest, if any, in the $10,500 payment received by the Trustee from Walsh Petroleum is superior to that of the Trustee. AgTexas submits that the payments constitute proceeds of its pre-petition security interest, more accurately its deed of trust lien against the Yoakum County properties. The Trustee argues that AgTexas's interest in the payment must arise under the assignment of rents clause contained in the deed of trust held by AgTexas and that AgTexas has failed, under Texas law, to timely and properly perfect its interest in the funds. Both AgTexas and the Trustee contend, and the Court agrees, that subsections (a) and (b)(1) of section 552 of the Bankruptcy Code, for the most part, resolve the issue before the Court. Subsections (a) and (b)(1) of section 552 state as follows:

> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> (b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security

---

[2]The Court notes that the $10,500 check was apparently postdated October 20, 2004.

> agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Subsection (a) cuts off liens against after-acquired property, meaning property acquired after the bankruptcy case is filed. Subsection (b)(1) provides the exception to the general rule set forth in subsection (a). If the debtor acquires property post-filing and such property constitutes proceeds, product, offspring, or profits of property covered by a valid pre-petition security interest, the lien remains intact.

It cannot be disputed that the $10,500 represents after-acquired property. The negotiations concerning the payments as between Walsh and the Trustee, the agreement reached for the payment, and the actual delivery of the funds all occurred post-filing. The next question, then, is whether the payments constitute proceeds or product of pre-petition property as determined by applicable non-bankruptcy law. As stated above, AgTexas argues that the payment, for both the surface damage amount and the water usage amount, is proceeds of the Yoakum County properties. AgTexas offers no authority for this argument, however. Neither Texas law nor the actual document that arguably gives rise to AgTexas's interest in the funds supports AgTexas's position. AgTexas does not explicitly identify the deed of trust it relies upon in creating its interest in the payment. In this regard, AgTexas makes the following argument in its brief:

> AgTexas purchased the position of the second lienholder by a foreclosure sale deed on November 2, 2004 and subsequently purchased the first lien position on the real property by way of a loan purchase agreement and assignment on December 10,

2004. The law states that where a mortgagee takes a conveyance of the land or a grantee through a fair transaction, there is a strong presumption of an intention to keep the security. *York v. Robbins*, 255 S.W. 720 (Tex. Comm'n App. 1923). Moreover, an intention on a mortgagee's part not to have the two interests merged is imputed where it appears to be to the mortgagee's interest to have them remain separated. *Baylor University v. Chester Sav. Bank*, 82 S.W.2d 738 (Tex. Civ. App. Waco 1935, writ refused). Clearly, Ag Texas intended to keep the security interest of the first lien holder, which was purchased on December 10, 2004 and the security interest with the ownership interest that it had previously acquired. This is evident by the form of the conveyance, which was by a loan purchase agreement and assignment of the loan documents, which included the assignment of the deed of trust. Accordingly, the ownership interest and security interest of AgTexas never merged, thus it is entitled to the sum of $10,500.00, which were the payments made to the Trustee while AgTexas had a perfected lien on such payments.

The deed of trust that was acquired by AgTexas from the first lienholder, First Ag Credit, FLCA, was admitted into evidence before this Court. The deed of trust is a standard deed of trust which contains an assignment of rents clause stating as follows:

> Mortgagors hereby transfer and assign unto the Bank to be applied on the debt secured hereby: (a) all eminent domain or condemnation award monies which may hereafter be awarded or paid for damages done to the security, or for any portion of the premises which may be appropriated for any character of public or quasi-public use; (b) *all the bonuses, rentals, royalties, damages, and delay monies that may be due or that may hereafter become due and payable to the mortgagors or their assigns under any oil, gas, mining or mineral lease or leases of any kind now existing, or which may hereafter come into existence (including agricultural contracts of every kind) covering the above described land or any part thereof*. Mortgagors authorize and direct payment of such money to said Bank until the debt secured hereby is paid. Such money may, at the option of the Bank, be applied on the debt whether due or not. The Bank shall not be obligated, in any manner, to collect said monies or any part thereof, and shall be responsible only for amounts received by the Bank. *Nothing herein contained shall be construed as a waiver of or to prejudice the priority of this lien or the options hereunder in favor of said Bank*.

Ex. E (emphasis added).

In accordance with section 552(b)(1), the Court first determines whether this deed of trust constitutes a "security agreement" that was entered into before the case was filed. The

Bankruptcy Code defines "security agreement" as an agreement that creates or provides for a security interest. The term "security interest" is defined as a lien created by an agreement. 11 U.S.C. § 101. The legislative history and comments offer the following description of the breadth of these terms:

> Though these terms are similar to the same terms in the Uniform Commercial Code, article IX, they are broader. For example, the U.C.C. does not cover real property mortgages. Under this definition, such a mortgage is included, as are all other liens created by agreement, even though not covered by the U.C.C. All U.C.C. security interests and security agreements are, however, security interests and security agreements under this definition.

11 U.S.C. § 101(50) (House and Senate Reports (Reform Act of 1978)). The express terms of a deed of trust can create a security agreement as contemplated under section 552. *See Premier Interval Resorts, Inc. v. Revanche, L.L.C. and Trustee of Max Gaming, L.L.C. (In re: Premier Interval Resorts, Inc.)*, Nos. 99-38340-HCA-11, Civ.A.3:02-CV-1772-G, 2003 WL 145069, at *4 (N.D. Tex. January 15, 2003) ("Section 3.1 of the deed of trust grants the actual security interest in Premier's property in order to secure the 42 million dollar loan"); *In re Placid Oil Co.*, 102 B.R. 538, 543 (Bankr. N.D. Tex. 1988) ("Applying Texas law to the case before us we find that the assignment of rents in the deed of trust . . . created a security interest."). The terms of the deed of trust here satisfy the definition of a security agreement for purposes of section 552(b)(1). It created a mortgage lien against the Yoakum County properties; the assignment of rents provision granted the mortgagee a potential additional interest in "bonuses, rentals, royalties, damages, and delay monies . . . ." Texas law, which the Court looks to as dictated by section 552(b)(1) (applicable non-bankruptcy law), does not treat such payments – bonuses, rentals, damages, etc. – as proceeds, product, or profits of the land itself. AgTexas's potential interest in the payment

here, both to the extent of the so-called surface damage amount and the water usage amount, arises from the assignment of rents provision of the deed of trust. Such provision specifically mentions both rentals and damages. Regardless of whether the payments are "rent or in the nature of rent" as the Trustee describes them, or "surface damage payments" as urged by AgTexas, the assignment clause is broad enough to cover the entirety of the payment.

Texas cases considering assignment of rents clauses have discussed two types: (1) the assignment intended as additional security and part of a lien, and (2) an absolute assignment that transfers title. Under the lien theory, the mortgagee is not the owner of the property and is not entitled to its possession, rents, or profits. *Taylor v. Brennan*, 621 S.W.2d 592, 593 (Tex. 1981). It is a common practice for the deed of trust, or separate instrument, to assign to the mortgagee the mortgagor's interest in all rents becoming due after the date of the mortgage as additional security for payment of the mortgage debt. *Id*.

Texas courts considering rents assigned as security have followed the common law rule that the assignment does not become operative until the mortgagee takes some affirmative action to enforce the lien, such as taking possession of the property, impounding the rents, securing the appointment of a receiver, or taking some other similar action. *NCNB Texas Nat. Bank v. Sterling Projects, Inc.*, 789 S.W.2d 358 (Tex. App– Dallas 1990, writ dism'd w.o.j.). An absolute assignment, however, operates to transfer the right to rents automatically upon the occurrence of a specified condition, such as default. An absolute assignment does not create a security interest but passes title to the rents. An absolute assignment is not security but is a *pro tanto* payment of the obligation. *Id*. The law favors the assignment of rents as additional security as opposed to an absolute assignment. *See Taylor v. Brennan*, 621 S.W.2d at 594; *see also Oryx Energy Co. v.*

*Union Nat'l Bank of Texas*, 895 S.W.2d 409, 414-15 (Tex. App.–San Antonio 1995, writ denied) (holding that courts are reluctant to construe an assignment of rents clause as an absolute assignment given the public policy against such assignments).

Where an assignment of rents has been issued contemporaneously with a deed of trust, the question of whether the assignment clause operates as a security pledge or an absolute assignment is determined by the intent of the parties. *Cadle Co. v. Collin Creek Phase II Assocs., Ltd.*, 998 S.W.2d 718 (Tex.App.–Texarkana 1999, no pet. h.). The intent may be ascertained by reading the documents together. *Id*. The described deed of trust contains a paragraph describing the purpose of the document. "This conveyance is made in trust to secure and enforce the payment of one certain promissory note executed by the mortgagors . . . and to secure the full and complete performance of the covenants and agreements herein contained and in any Loan Agreement or any other agreement executed in connection with said note . . . ." Ex. E. The assignment clause, as quoted above, specifically refers to the "debt secured hereby" and how it shall not be construed to prejudice the "priority of this lien." *Id*. The deed of trust, with the rental assignment clause, reflects the parties' intent, in the Court's view, to make a collateral assignment of rents, damages, or any other such payments received by the mortgagor.

The Texarkana Court of Appeals evaluated an assignment clause in *Cadle Co. v. Collin Creek Phase II Assocs., Ltd.*, supra. There, Cadle, the creditor, pointed to the first paragraph of its assignment clause that stated the debtor absolutely and unconditionally assigned, transferred, and conveyed all rents. Cadle also contended that a sentence stating, "[f]ailure . . . to collect said Rents shall not in any manner impair the subsequent enforcement . . . of the right, power and

authority herein conferred upon . . . ," indicated the assignment was absolute. The court disagreed and said as follows:

> the portion of the assignment stating that Cadle's failure to collect the rents shall not in any manner impair the subsequent enforcement of the right does not indicate an absolute assignment, but rather supports the construction of the assignment clause as a security agreement. Cadle's failure to collect rents after default does not impair its ability to come on the property at a later date and begin collecting rents as collateral for the underlying indebtedness. Because we find that the assignment clause is unambiguously a pledge of security, Cadle is only entitled to the rents it collected after it took possession of the property.

*Cadle Co. v. Collin Creek Phase II Assocs., Ltd.*, 998 S.W.2d at 724. The clause in *Cadle* is similar to the clause here. The deed of trust here specifies "[t]he Bank shall not be obligated, in any manner, to collect said monies or any part thereof, and shall be responsible only for amounts received by the Bank. Nothing herein contained shall be construed as a waiver of or to prejudice the priority of this lien or the options hereunder in favor of said Bank." Although the *Cadle* deed spoke of a failure to collect, the deed here accomplishes the same thing by relieving AgTexas from any obligation to collect the rent in the first place.

Explicit language is required to justify finding an absolute assignment of rents. *801 Nolana, Inc. v. RTC Mortgage Trust 1994-S6*, 944 S.W.2d 751 (Tex. App.–Corpus Christi 1997, writ denied). The Fifth Circuit, in *FDIC v. Int'l Prop. Mgmt., Inc.*, 929 F.2d 1033 (5th Cir. 1991), evaluated a rental assignment clause, holding the clause there created a collateral assignment. The clause contained language that the assignment was intended to be "absolute, unconditional and presently effective" and that it would never be necessary for the holder to institute legal proceedings of any kind to enforce the provisions. *Id*. at 1037. Despite this language, the court stressed Texas public policy and noted other inclusions in the clause. Specifically, the court said

that provisions in the assignment allowing the mortgagor to receive rents until default required the mortgagee to apply rental income to the debt (with any remainder going to the mortgagor) and providing for termination of the assignment of rents on release of the deed of trust would have been unnecessary in an absolute assignment. *Id*. at 1038.

A creditor holding a collateral assignment of rents must take affirmative steps to secure its rights to them. An assignment of rents clause is controlled by the common law rule that the assignment does not become operative until the mortgagee obtains possession of the property, impounds the rents, secures the appointment of a receiver, or takes some similar affirmative action. *801 Nolana, Inc. v. RTC Mortgage Trust 1994-S6*, 944 S.W.2d at 754; *Cadle Co. v. Collin Creek Phase II Assocs., Ltd.*, 998 S.W.2d at 724. The action taken, to be effective, must take place before the mortgagor receives the payment, which was not done here.

### Conclusion

Neither AgTexas nor its predecessors in interest, either of the prior lienholders, took any affirmative action, prior to Walsh Petroleum's payment of the $10,500 to the Trustee, to create or perfect an interest in the payment. Texas law does not recognize such a payment as constituting proceeds of the real property interests covered by a Texas deed of trust. AgTexas has only objected to the Trustee's final report, which is not sufficient to create an interest in the funds. The Trustee's objection to AgTexas's claim will be sustained.

### End of Memorandum Opinion ###